In re Shari Anne ROLL, Debtor.

In re Renee M. Currie, Debtor.

Nos. 08–11943, 08–11944.

United States Bankruptcy Court, W.D. Wisconsin.

Nov. 10, 2008.

Victoria J. Hewelt Cazel, Madison, WI, for Debtor

## MEMORANDUM DECISION

ROBERT D. MARTIN, Bankruptcy Judge.

Shari Anne Roll and Renee M. Currie filed Chapter 7 cases on April 22, 2008. The U.S. Trustee filed a motion to dismiss both cases for abuse on July 28, 2008. After a preliminary hearing, I took the matter under advisement.

Roll and Currie live in the same house with Roll's adult niece. They filed separate Chapter 7 petitions. Roll claims her current monthly income is $4,783.36, and Currie claims her current monthly income is $3,598.41. Roll claims monthly expenses of $4,647.50, and Currie claims monthly expenses of $3,873.41. The parties now agree that the appropriate household size for purposes of the means test calculation is three.

### I.

The Bankruptcy Code provides that

(b)(1) After notice and a hearing, the court ... may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts ... if it finds that the granting of relief would be an abuse of the provisions of this chapter.

(2)(A)(i) In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter, the court shall presume abuse exists if the debtor's current monthly income reduced by the amounts determined under clauses (ii), (iii), and (iv), and multiplied by 60 is not less than the lesser of—

(I) 25 percent of the debtor's nonpriority unsecured claims in the case, or $6,575, whichever is greater; or

(II) $10,950.

11 U.S.C. § 707(b)(1)-(2) (2008). The Code also provides

(7)(A) No judge, United States trustee (or bankruptcy administrator, if any), trustee, or other party in interest may file a motion under paragraph (2) if the current monthly income of the debtor ... and the debtor's spouse combined, as of the date of the order for relief when multiplied by 12, is equal to or less than—

(i) in the case of a debtor in a household of 1 person, the median family income of the applicable State for 1 earner;

(ii) in the case of a debtor in a household of 2, 3, or 4 individuals, the highest median family income of the applicable State for a family of the same number or fewer individuals....

Id. § 707(b)(7)(A).

The Bankruptcy Code states that current monthly income "includes any amount paid by any entity other than the debtor ... on a regular basis for the household expenses of the debtor or the debtor's dependents." 11 U.S.C. § 101(10A)(B) The term "entity" is defined to include "person." Id. § 101(15).

■ This provision of the Code has been interpreted to mean "the statute does not require the inclusion of income from a third-party that is used to support a non-dependent." Ellringer, 370 B.R. 905, 911 (Bankr.D.Minn.2007). In Ellringer, the Court rejected the U.S. Trustee's contention that "if the debtor's household includes Pamela [household member of debtor], then Pamela's entire income must be included in the debtor's calculation of current monthly income." Id. Accordingly, the Court found that only the household member's contributions that were "used to support the debtor or the debtor's dependents" could be included in calculation of the debtor's current monthly income. Id. The Ellringer court considered only $260 of the household member's income in the debtor's income. Id. at 912. This amount represented the amount that the debtor used for a loan payment on a car that the debtor owned. Id. The debtor used the remainder of the amounts given by the household member to pay for the household member's living expenses. Id.

The U.S. Trustee advocates considering all of the income of Roll and Currie in each case for purposes of the means test. The U.S. Trustee complains that Roll and Currie "combine their incomes in a single bank account and pay their bills from that account." (Tr.'s Br. at 4). Roll and Currie argue that they "listed and maintained separate checking accounts for their personal debts and a shared checking account for shared expenses and debts." (Debtor's Br. at 4). Roll and Currie's assertion is not supported by the schedules that they filed. Their respective Schedule B's identify identical checking and savings accounts. There is no indication that either

debtor maintains a separate account. In addition, neither debtor identified any non-joint bank accounts when questioned by the Chapter 7 trustee at their respective § 341 meetings.

In any event, the burden of demonstrating income pursuant to § 101(10A)(B) falls upon the U.S. Trustee. *See, e.g., In re Hall*, No. 06–71296, 2007 WL 445517, at *3 (Bankr.C.D.Ill. Feb. 12, 2007) ("[T]he trustee has the burden of proving how much, if any, of a non-filing spouse's income should be imputed to a debtor when making the disposable income calculation."). While *Hall* dealt with the question of a non-filing spouse's income attributable to the debtor in the context of Chapter 13, there is no difference between a non-filing spouse and a filing housemate for purposes of § 101(10A)(A). Either person is simply an "entity other than the debtor" that may or may not regularly contribute to the expenses of ·the debtor or the debtor's dependents. Similarly, the U.S. Trustee, as the moving party, bears the burden of proving that a debtor's debts are primarily consumer debts. *See In re Perkins*, 393 B.R. 770, 773 (Bankr.M.D.Fla.2008) (holding that U.S. Trustee bears burden to "establish with competent proof that the Debtor is subject to the provisions set forth in Section 707(b) of the Bankruptcy Code"). Also, the U.S. Trustee, as the moving party, bears the burden of demonstrating the all of either debtor's income is used to regularly pay household expenses of the other debtor.

The U.S. Trustee has yet to present any evidence regarding what portion of each debtor's income is used to pay household expenses of the other debtor. A court may not simply ignore the express language of the Code and conclude that *all* of each debtor's income is used to pay for household expenses of the other debtor. Such an assumption would be patently illogical. It is highly unlikely that either

Roll or Currie spends *all* of their income to pay the household expenses of the other. It is undisputed that Roll contributes a portion of her income to support her niece. If Roll (the higher-income debtor) paid all of Currie's expenses, she would have insufficient income left to pay her own expenses. Payments for the niece cannot be income to Currie because Roll's niece is clearly not Currie or Currie's dependent.

The U.S. Trustee contends that this logical conundrum is resolved if each debtor is given credit for all of the household expenses jointly incurred. This ignores the critical issue in the case, however. If the U.S. Trustee's position regarding income is rejected, *no inquiry into expenses is required*, except to the extent that § 707(b)(3) applies.

At this stage, it is impossible to make an accurate determination of what portion of either debtor's income is used to pay the household expenses of the other debtor. Although Currie and Roll surely use a portion of their income to pay household expenses of the other, the record is insufficient to draw any meaningful conclusion about the correct amount to attribute to each debtor. Accordingly, each debtor has income that is less than "the highest median family income of the applicable State for a family of the same number or fewer individuals." Section 707(b)(7) therefore bars the Court or the U.S. Trustee from performing the means test calculation.

Upon the request of the U.S. Trustee, made within twenty days of this memorandum decision, a final hearing will be scheduled to permit the facts to be fully developed. If no such request is received, the motion will be denied without further proceedings.

## II.

Although the present motion has focused on the "means test," there is a

suggestion that the debtors' other circumstances would support dismissal The Code provides

> (3) In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter in a case in which the presumption in subparagraph (A)(i) of such paragraph does not arise or is rebutted, the court shall consider—
>> (A) whether the debtor filed the petition in bad faith; or
>> (B) the totality of the circumstances (including whether the debtor seeks to reject a personal services contract and the financial need for such rejection as sought by the debtor) of the debtor's financial situation demonstrates abuse.

11 U.S.C. § 707(b)(3). Apparently, the court has the option of considering whether there was bad faith in filing or whether the totality of the circumstances of the debtor's financial situation demonstrates abuse.

Prior to BAPCPA, no circuit-level law defining "substantial abuse" existed. In the Western District of Wisconsin, the "totality of the circumstances" approach was adopted, at least in substance, if not by name. *See In re Herbst,* 95 B.R. 98, 101 (W.D.Wis.1988).

BAPCPA essentially codifies the *Herbst* holding. Specifically, BAPCPA establishes a presumption that the ability to fund a Chapter 13 plan renders the granting of relief "abusive." *Herbst* similarly determined that an ability to repay, without additional facts, renders the granting of relief "substantially abusive." Additional facts, under *Herbst,* might change the conclusion of "substantial abuse." Under BAPCPA, certain statutorily-defined facts may rebut the presumption of abuse. In addition, both BAPCPA and *Herbst* apparently allow the court to find abuse or

substantial abuse, respectively, under a "totality of the circumstances" approach.

Post–BAPCPA decisions indicate that "while ability to pay is a factor in the totality of circumstances test, and may even be the primary factor to be considered, if it is the only indicia of abuse, the case should not be dismissed under that test." *In re Nockerts,* 357 B.R. 497, 507 (Bankr.E.D.Wis.2006). The court continued: "more than an ability to pay (as shown on the debtor's Schedule I and J) must be shown to demonstrate abuse under § 707(b)(3)(B). This additional evidence may include the *Green* factors, or may point to a manipulation of the means test as illustrated by Judge Wedoff's article." *Id.* at 507–08. The *"Green"* factors include:

> (1) Whether the bankruptcy petition was filed because of sudden illness, calamity, disability, or unemployment;
> (2) Whether the debtor incurred cash advances and made consumer purchases far in excess of his ability to repay;
> (3) Whether the debtor's proposed family budget is excessive or unreasonable;
> (4) Whether the debtor's schedules and statement of current income and expenses reasonably and accurately reflect the true financial condition; and
> (5) Whether the petition was filed in good faith.

*Green v. Staples (In re Green),* 934 F.2d 568, 572 (4th Cir.1991). Judge Wedoff provides the following "illustration":

> for purposes of the means test, debt secured even by such items as luxury vehicles, pleasure boats, and vacation homes would be deductible. Moreover, under a plain language analysis, the balance of a balloon mortgage that became contractually due during the five years after the bankruptcy filing-and perhaps even the total balance due on a defaulted mortgage that had been contractually accelerated-would be entirely deductible.

However, if deductions of this sort allowed a wealthy debtor to avoid the presumption of abuse under the means test, an abuse might still be found in consideration of the "the totality of the circumstances ... of the debtor's financial situation" pursuant to § 707(b)(3). Eugene R. Wedoff, *Means Testing In The New § 707(B)*, 79 Am. Bankr.L.J. 231, 234 (2005).

The *Nockerts* court's conclusion that ability to pay, standing alone, is insufficient to find abuse in a below-median income case, appears to be a sound interpretation of § 707(b)(3). The code enumerates three bases for a finding of abuse: (1) the "ability to pay" presumption contained in § 707(b)(2); (2) filing a petition in bad faith; and (3) the totality of the circumstances of the debtor's financial position. The court need only consider the latter two bases if the first basis does not arise. In other words, if the debtor had the ability to pay, the presumption under § 707(b)(2) would arise, and the court need not consider bad faith or totality of the circumstances (unless the presumption was rebutted). If the debtor does not have the ability to pay, then the court may consider bad faith and totality of the circumstances. After finding that the debtor has no ability to pay pursuant to § 707(b)(2), it does not make sense to use an unspecified, court-crafted formula to conclude that, the debtor does have an ability to pay, and that the case should therefore be dismissed under the totality of the circumstances approach. If Congress meant for bankruptcy judges to dismiss cases based solely on an ability to pay, as calculated at the discretion of a judge, it could have drafted a statute that explicitly included that as a basis for dismissal.

It may be that the debtors, who have significant, entirely commingled, aggregate income, have an ability to pay their creditors. But something more is required to support a finding of abuse premised on totality of the circumstances.

The U.S. Trustee points out that the debtors are paying $500 per month toward the principal balance of their mortgage, which was given shortly before this filing, and argues that the petitions were not filed because of "sudden illness, calamity, disability, or unemployment," noting that each debtor has been employed by the same employer for at least seven years. The U.S. Trustee also suggests that the debtors' schedules and statement of current income and expenses does not accurately reflect their true financial condition.

The U.S. Trustee continues to contend that the debtors should be treated as a single economic unit. Viewed through this lens, the debtors together have income that is 61% more than the Wisconsin median family income for a family of three. Finally, the U.S. Trustee contends that the debtors are "manipulating the means test" by filing separate petitions and not counting the other debtor's income as their own for purposes of the means test. But that can't be so when only married persons may file joint petitions.[1] The U.S. Trustee has not suggested that either debtor's budget is unreasonable, nor has the U.S. Trustee alleged that the debtors have made excessive consumer purchases.

As with the means test, the U.S. Trustee should not be precluded from proving abuse under the totality of the circum-

---

1. The U.S. Trustee's position seems to advocate that same-sex couples marry and file a joint petition instead of proceeding as these debtors did. The Court notes that the Wisconsin Constitution prohibits these debtors from marrying, and the federal Defense of Marriage Act prohibits this Court from treating a same-sex couple as married. *See* Wis. Const. Art. XIII, § 13 ("Only a marriage between one man and one woman shall be

stances provision, by its failure to identify sufficient evidence of that claim at the time of the preliminary hearing. Therefore, upon request of the U.S. Trustee, made within twenty days of this memorandum decision, a final hearing will be scheduled to permit the facts to be fully developed. If no such request is received, the motion will be denied without further proceedings.

## ORDER

The Court having reached the conclusions of law contained in the memorandum decision filed this date, it is hereby ORDERED that the motions of the U.S. Trustee shall be DENIED unless the U.S. Trustee requests a final hearing on one or more motions within twenty days of the date of this Order.

valid or recognized as a marriage in this state."); 1 U.S.C. § 7 ("In determining the meaning of any Act of Congress ... the word "marriage" means only a legal union between one man and one woman as husband and wife, and the word "spouse" refers only to a person of the opposite sex who is a husband or a wife.").