**In re Orin Bret JUSTICE, Debtor.**

**No. 5:06–bk–71631.**

United States Bankruptcy Court,
W.D. Arkansas,
Fayetteville Division.

April 15, 2009.

Todd P. Lewis, Conner & Winters, LLP, Fayetteville, AR, for Advanced Control Solutions, Inc.

Jack L. Martin, Steven Travis Robbins, Jack & Holly Martin, PA, Springdale, AR, for the debtor.

William M. Clark, Jr., chapter 7 trustee.

## ORDER

BEN T. BARRY, Bankruptcy Judge.

Before the Court is a Motion to Dismiss filed on April 24, 2007, by creditor Advanced Control Solutions, Inc. [Advanced Control], remanded to this Court by the United States District Court for further proceedings consistent with its Order of September 22, 2008. A hearing was held on the motion to dismiss January 14, 2009, at the conclusion of which the Court took the motion under advisement. For the reasons stated below, the Court grants Advanced Control's motion; the debtor has 20 days from the date of this order to convert or the case will be dismissed.

### Jurisdiction

This Court has jurisdiction over this matter under 28 U.S.C. § 1334 and 28 U.S.C. § 157, and it is a core proceeding under 28 U.S.C. § 157(b)(2)(A). The fol-

lowing order constitutes findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052, made applicable to this proceeding under Federal Rule of Bankruptcy Procedure 9014.

**Procedural History**

On August 1, 2006, the debtor filed a chapter 13 bankruptcy petition. On December 20, 2006, the chapter 13 case was converted to a case under chapter 7. On January 16, 2007, the case was dismissed for failure to file a chapter 7 statement of current monthly income, or means test. The next day, the debtor filed a chapter 7 means test [Means Test] indicating a 60–month disposable income of $28,203.60, a household size of three persons, expenses calculated based on a family size of three, that the debtor is an above-median income debtor, and that a presumption of abuse arises. On January 23, 2007, the debtor filed a Motion to Set Aside Dismissal Order, to which the chapter 7 trustee and Advanced Control responded. The Court held a hearing on March 6, 2007, and took the matter under advisement. On March 15, 2007, the Court granted the debtor's motion and set aside the dismissal order.

On April 24, 2007, Advanced Control filed a Motion to Dismiss the debtor's case arguing for dismissal under 11 U.S.C. § 707(b)(2), alleging an unrebutted presumption of abuse existed, and under § 707(b)(3), alleging that the totality of the circumstances of the debtor's financial situation demonstrated abuse. The Court held a hearing on July 24, 2007, at which

time the motion to dismiss was denied. In its ruling, the Court stated that it was in the best interests of creditors to neither dismiss or convert the case, that it relied on § 707(b), and that the language of § 707(b) is "permissive, it's not mandatory—the court may dismiss a case...."[1] The Court also found that the totality of the circumstances of the debtor's financial situation did not warrant dismissal under § 707(b)(3) and that the debtor did not file his petition in bad faith. Advanced Control moved for leave to take an interlocutory appeal of the order denying its Motion to Dismiss, but leave was denied by the district court.

On August 30, 2007, the debtor filed an amended chapter 7 means test; on September 5, 2007, the debtor filed a second amended means test [Amended Means Test]. The Amended Means Test indicated a 60–month disposable income of $1383.60, a household size of five persons, expenses calculated based on a family size of five, that the debtor is an above-median income debtor, and that a presumption of abuse *does not* arise.

On September 25, 2007, the debtor filed a Motion for Discharge, requesting that the Court grant him a discharge pursuant to § 727(a). On October 15, 2007, Advanced Control responded, and on November 7, 2007, the Court held a hearing on the motion and response. The Court granted the motion for discharge on November 13, 2007. At the hearing, the Amended Means Test was not introduced into evidence,[2] and the Court stated, in

---

**1.** Section 707(b)(1) states, "After notice and a hearing, the court, on its own motion or on a motion by the United States trustee, trustee (or bankruptcy administrator, if any), or any party in interest, *may dismiss a case* filed by an individual debtor under this chapter whose debts are primarily consumer debts, or, with the debtor's consent, convert such a case to a case under chapter 11 or 13 of this title, *if it*

*finds that the granting of relief would be an abuse* of the provisions of this chapter." 11 U.S.C. § 707(b)(1) (emphasis added).

**2.** Both attorneys referenced the Amended Means Test during the hearing. Counsel for Advanced Control referenced the filing of the Amended Means Test in his opening as a reason the Court should not grant the debt-

ruling on the motion for discharge, that the Amended Means Test should not be considered because it was not relevant to the motion before the Court. The issue before the Court was whether the debtor was entitled to a discharge under § 727(a).

On November 19, 2007, Advanced Control filed a Notice of Appeal, appealing this Court's Order Overruling Motion to Dismiss and Order Granting Debtor's Motion for Discharge. In its appeal to the United States District Court, Advanced Control argued that this Court erred in its view that dismissal or conversion under § 707(b)(1) is discretionary when an unrebutted presumption of abuse exists. The district court agreed with Advanced Control and concluded "that the Bankruptcy Court had only two options when faced with the unrebutted presumption of abuse in Justice's Means Test (to dismiss his petition or convert it back to a Chapter 13)," and reversed this Court's order granting the debtor's discharge. *Justice v. Advanced Control Solutions, Inc.*, 2008 WL 4368668, at *5 (W.D.Ark. Sept.22, 2008). The district court declined to reverse this Court's order denying the motion to dismiss because "[t]he Bankruptcy Court is the proper court to determine, in the first instance, whether dismissal or conversion to Chapter 13 is the proper step to be taken based on Justice's presumed abuse of Chapter 7." *Id.* at *6. The district court remanded the case to this Court "for further proceedings consistent with [its] opinion." *Id.*

**Consideration of the Motion to Dismiss on Remand**

Pursuant to the district court's order of remand, the motion to dismiss was reset for hearing in this Court on November 13, 2008. Prior to the hearing, the debtor filed an Amended Motion for Hearing on Consideration of Means Test Filed September 5, 2007, requesting that this Court consider the Amended Means Test in the November 13 hearing. Advanced Control responded and the amended motion and response were also set for hearing on November 13.

At the November 13 hearing, Advanced Control argued that the law of the case doctrine prevented the Court from considering the Amended Means Test relying, in part, on dictum in this Court's ruling at the November 7 hearing. However, the Court disagreed and granted the debtor's motion. The Court stated that the law of the case doctrine did not prohibit the Amended Means Test from being considered in the context of the motion to dismiss on remand because the issue was not before the Court at the November 7, 2007, hearing and the district court did not consider the Amended Means Test on appeal. In its order overruling this Court's Order granting the debtor a discharge, the district court recognized that this Court did not consider the debtor's Amended Means Test. *Justice*, 2008 WL 4368668, at * 1, *4. The Court then continued the hearing on the motion to dismiss to January 14, 2009.

or's discharge, though he later argued that the Court should not consider the Amended Means Test at all. Counsel for the debtor referenced that the Means Test had been amended to reflect the debtor's living situation. When asked whether either party wished to introduce evidence, Advanced Control stated that it relied "on the record of the Court as far as the filing of pleadings and the orders that have been already entered ....",

but introduced no stipulations or evidence and did not ask the Court to take judicial notice of anything. Likewise, the debtor's counsel did not introduce the Amended Means Test or provide stipulations relating to it. Therefore, at most, the only evidence before the Court at that hearing about the Amended Means Test was that one had been filed.

On December 3, 2008, the debtor filed a response to the motion to dismiss and a request that the Court dismiss the motion as untimely. Advanced Control responded on December 30, 2008, and both responses were also set for hearing on January 14, 2008. At the January 14 hearing, the Court first heard, and denied, the debtor's motion to dismiss Advanced Control's motion to dismiss; it then proceeded to consider Advanced Control's motion to dismiss. The Court admitted the Means Test and the Amended Means Test into evidence, as well as certain pages of Mr. Justice's deposition, taken on October 10, 2007. At the conclusion of the hearing, the Court took the motion to dismiss under advisement. Because this Court previously ruled at the November 13 hearing that consideration of the Amended Means Test did not violate the law of the case doctrine, this Court will consider the Amended Means Test and determine, in accordance with the directives from the United States District Court, whether an unrebutted presumption of abuse exists, which would require this Court either to convert or dismiss the debtor's case under § 707(b)(2).

**The Debtor's Amended Means Test**

Line 14 of the Amended Means Test states that the debtor has a "household size" of five and that the applicable median family income in Arkansas for a household size of five is $57,778.00. Mr. Justice's income appears to be his sole source of income, and no other person or entity contributes income to the household expenses on a regular basis, according to line 8. The debtor's current monthly income is $7246.81 and his annualized income is $86,961.72. Because his annualized income is greater than the applicable median family income for the state of Arkansas, the debtor is an above-median income debtor and is required to complete the balance of the means test.

Part V calculates deductions allowed under § 707(b)(2), and line 19 in this section allows a deduction for Allowable Living Expenses using IRS National Standards. On line 19 of his Amended Means Test, the debtor took a deduction of $1762.00, which would be the applicable amount under the IRS National Standards for a family size of five.[3] Line 20A allows a deduction for "housing and utilities; non-mortgage expenses" using IRS Housing and Utilities Standards. On line 20A of his Amended Means Test, the debtor took a deduction in the amount of $404.00, which is the applicable local standard for a family size of more than four living in Benton County, where the debtor resides. Line 20B allows a deduction for "housing and utilities; mortgage/rent expense" using IRS Housing and Utilities Standards. On line 20B, the debtor stated that his housing and utilities for mortgage expense deduction is $805.00, which is also the applicable local standard for a family size of more than four persons living in Benton County. Line 38 allows a deduction for the debtor's actual average monthly expenses incurred in providing elementary and secondary education for his minor child. On line 38, the debtor stated an expense of $125.00 per month.

**Position of the Parties**

On page 1 of the Amended Means Test, the debtor checked a box indicating that a presumption of abuse does not arise. However, Advanced Control disagrees and argued that the debtor erred in completing his Amended Means Test by choosing ap-

---

**3.** The debtor's Official Form B22A uses the term "family size" in lines 19, 20A, and 20B; however, these lines on Official Form B22A have since been amended, and "family size" is replaced with "household size." This change does not affect the outcome of this Court's decision.

plicable Local and National Standards based on a family size of five instead of a family size of three.[4] Advanced Control asserts that the debtor should have chosen National and Local Standards based on a family size of three, in part, because the debtor's adult daughter and her son were not claimed as dependents on the debtor's IRS tax returns and, therefore, cannot be "dependents of the debtor" under § 707(b)(2)(A)(ii)(I). If the debtor's expense calculations were based on a family size of three, an unrebutted presumption of abuse would exist. The debtor's position is that claiming his adult daughter and her son on his IRS tax returns is not determinative of whether they are his dependents for purposes of § 707(b)(2)(A)(ii)(I), and he urges the Court to adopt a more common definition of the term "dependent."

Advanced Control also argued that the educational expense of $125.00 claimed on line 38 of the Amended Means Test should not be allowed. Advanced Control's position is that this expense was not a reasonable or necessary expense and should be removed from the debtor's allowed expenses.

### Findings of Fact and Conclusions of Law

There are two issues before the Court, the resolution of which may result in a presumption of abuse on the debtor's Amended Means Test. The first issue is whether the debtor completed his Amended Means Test correctly by using a family size of five, which removes the presumption of abuse that would otherwise exist. If in resolving this issue, the debtor's adult daughter, Arrin, and her son are considered dependents of the debtor, the debtor may be required to add certain financial

assistance to his Amended Means Test calculations. The second issue is whether the debtor may claim the $125.00 educational expense. The resolution of either issue could change the outcome of the Amended Means Test.

### Whether the Debtor May Choose Applicable Standards Based on a Family Size of Five

Preliminarily, the Court must address the relationship between the term "dependent," as used in § 707(b)(2)(A)(ii)(I), and the phrase "family size," as used on the means test form, to determine which term controls for the purpose of choosing applicable local and national standards.

Because the debtor's annualized income is greater than the debtor's applicable median family income, the debtor must complete the calculations set forth in § 707(b)(2) to determine whether his chapter 7 bankruptcy case is presumed to be an abuse under the code. 11 U.S.C. § 707(b)(2), (7). The calculations required under § 707(b)(2) allow debtors to deduct various monthly expenses from their current monthly income, including certain expenses specified in the collection standards of the Internal Revenue Service. Specifically, § 707(b)(2)(A)(ii)(I) states,

> The debtor's monthly expenses shall be the debtor's applicable monthly expense amounts specified under the National Standards and Local Standards, and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides, as in effect on the date of the order for relief, *for the debtor, the dependents of the debtor, and the spouse of the debtor in a joint case, if the*

---

**4.** At the hearing, Advanced Control did not allege that the debtor erred in choosing his applicable median family income based on a

household size of five because under either scenario, the debtor is above the median family income for the state of Arkansas.

*spouse is not otherwise a dependent.* Such expenses shall include reasonably necessary health insurance, disability insurance, and health savings account expenses for the debtor, the spouse of the debtor, or the dependents of the debtor.

11 U.S.C. § 707(b)(2)(A)(ii)(I) (emphasis added). The computation required by § 707(b)(2), also referred to as the means test, is made on Official Form B22A in accordance with Federal Rule of Bankruptcy Procedure 1007(b)(4). Lines 19, 20A, and 20B of the debtor's Amended Means Test directed him to use IRS Standards based on his applicable *family size* for the allowed expenses on those lines.[5]

 Although the term family size is used on the means test form, the bankruptcy code expressly limits the debtor's monthly expenses to those for the debtor, the spouse of the debtor, and *dependents* of the debtor, with exceptions not relevant in this case. Presumably, family size would be a more inclusive term, but because Congress chose to limit debtors' expenses to their dependents, the form must defer to the language of the code. As the court in *In re Law* stated,

> [W]hen an official form is in conflict with statutory language, the court cannot choose to defer to the official form. The statute controls over the official form.... Congress did not create Form 22C. Congress drafted and passed BAPCPA,[6] while the Judicial Conference of the United States created Form 22C. This Court thus rejects the notion that any instructions on that form can be used to divine congressional intent-especially when the language on the form directly conflicts with clear statutory language....

*In re Law*, 2008 WL 1867971, at *7 (Bankr.D.Kan. Apr.24, 2008)(disagreeing with the court in *In re Plumb*, which deferred to the form's instructions because the instructions were more specific, reflect the actual living situation of many families, and Congress used the term "dependents" elsewhere on the means test form. *In re Plumb*, 373 B.R. 429, 437–38 (Bankr. W.D.N.C.2007)); *see also In re Napier*, 2006 WL 4128358, at *2 (Bankr.D.S.C. Sept.18, 2006)(holding "[t]o the extent that Official Form B22C indicates that Debtors may include the boarders in the means test calculation, it must yield to the plain language of § 707(b)(2), which only allows Debtors to include dependents."). Accordingly, the Court finds that the term "dependents" controls in determining the family size the debtor uses to choose applicable local and national standards.

### Whether the Adult Daughter is a Dependent Under the Code

Therefore, the question before the Court becomes whether the debtor's adult daughter and grandson are within the definition of "dependents" under § 707(b)(2)(A)(ii)(I). Mr. Justice testified that at the time of the bankruptcy filing, August 1, 2006, his wife, minor daughter, adult daughter (Arrin) and Arrin's infant son lived with him in his and his wife's home. Arrin had moved back in around September 2005, when she was 23 years old. Mr. Justice testified that Arrin moved in with them because she was pregnant, unemployed, and could not afford a place to live. Arrin's son was born February 28, 2006. When Mr. Justice filed his bankruptcy petition, Arrin was unemployed and a full-time student attending community college classes. Arrin received some state aid to pay for daycare, and Ms. Justice also watched her grandchild while Arrin was at school. The

---

**5.** *See supra* note 3.

**6.** Bankruptcy Abuse Prevention and Consumer Protection Act of 2005.

debtor testified that Arrin received no income and received no child support. She received some assistance from the Single Parent Scholarship Fund, which helped pay for her car payment, insurance, and gasoline. Arrin also received money from scholarships and other aid to pay for school and books. Mr. Justice testified that she contributed none of this support to the household and paid no rent. The debtor and his wife paid for Arrin's food, supplies for the baby, and home utilities. At the hearing, Mr. Justice did not know the dollar amounts of how much assistance Arrin received from any source, and his deposition does not contain this information. Mr. Justice also testified that Arrin could not have "gotten by" without help and that her stay was open-ended. Arrin and her son moved out of her parents' home in September 2007.

The debtor testified that he did not claim Arrin on his 2005 or 2006 tax returns and did not claim Arrin's son, who was born in early 2006, on his 2006 tax returns. He stated that no one told him he could not claim them, he just did not think he could. This Court takes judicial notice that the debtor did list Arrin and her son as his dependents on Schedule I of his bankruptcy schedules.[7] According to his deposition, the debtor amended his Means Test to include Arrin and her son as household members because his lawyers believed they found case law supporting his right to add them.

### Definition of Dependent

 "Dependent" is defined in several areas of federal legislation. *Leslie Womack Real Estate, Inc. v. Dunbar (In re Dunbar)*, 99 B.R. 320, 324 (Bankr.M.D.La.1989)(citing at least six federal statutes defining dependent in various legal contexts). Congress could have defined "dependent" for purposes of the bankruptcy code, but did not. *In re Dunbar*, 99 B.R. at 324 (noting that "Congress has specifically defined [dependent] when the term was to be used in a particular manner for a particular purpose or in a manner other than its plain and usual meaning"). In the absence of a definition provided by Congress, this Court will defer to the "fundamental canon of statutory construction ... that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning." *Dunbar*, 99 B.R. at 324 (quoting *Perrin v. United States*, 444 U.S. 37, 42, 100 S.Ct. 311, 62 L.Ed.2d 199 (1979)); *see also Rousey v. Jacoway*, 544 U.S. 320, 330, 125 S.Ct. 1561, 161 L.Ed.2d 563 (2005)(looking to the "ordinary meaning" of terms used, but not defined, in the bankruptcy code). This approach was taken by one court that concluded, in the context of completing the debtor's schedules, that "dependent" meant "a person who reasonably relies on the debtor for support and whom the debtor has reason to and does support financially." *Dunbar*, 99 B.R. at 324. Black's Law Dictionary provides a similar, but broader, definition: "[o]ne who relies on another for support; one not able to exist or sustain oneself without the power or aid of someone else." Black's Law Dictionary (8th ed.2004).

A review of case law reflects that, despite analysis by several courts, there is no consensus among bankruptcy courts as to who is a dependent for purposes related to the means test. In at least one case, whether the alleged dependents were claimed as dependents on the debtor's IRS

---

**7.** A court may take judicial notice of its own orders and records in a case before the court. Fed.R.Evid. 201.

tax returns was determinative.[8] *United States Trustee v. Duncan (In re Duncan),* 201 B.R. 889, 897 (Bankr.W.D.Pa.1996)(stating that "[b]ecause respondent and his wife do not presently have any dependents, as evidenced by their most recent income tax returns and respondent's Schedule I, the Court must find that any support that they provide to the other six members of their present household is necessarily voluntary in nature.").

Other courts have considered whether the debtor *could* have claimed the alleged dependent on the IRS tax returns as one factor among others. In one case, the court held that the debtors' 18 year-old nephew living with them at the time of the bankruptcy filing was not a dependent because he was not listed on the debtors' tax returns and no evidence was presented as to the debtors' expenditures on his behalf. *In re O'Connor,* 2008 WL 4516374, at *10–11 (Bankr.D.Mont. Sept.30, 2008). In a case out of Missouri, the fact that the debtors would be entitled to claim their adult 20–year–old daughter on their IRS tax return was a factor the court considered, along with the fact that under applicable state law, the debtors' parental support obligation continued until their child completed either college or post-secondary vocational education, or reached the age of 22. *In re Smith,* 269 B.R. 686, 689–90 (Bankr.W.D.Mo.2001).

In the context of a pre-BAPCPA chapter 13 plan confirmation, one court defined dependent as a person supported financially by a debtor and who reasonably relies on that support, but clarified that "[o]ne could certainly argue that it is always 'reasonable' for the recipient of financial assistance to rely on such assistance: the more

pertinent question is whether it is reasonable under the circumstances for the court to permit the debtor to undertake the obligation of supporting the would-be dependent." *In re Gonzales,* 157 B.R. 604, 609 (Bankr.E.D.Mich.1993). In *Gonzales,* the adult children in question were still considered dependents of their parents by the IRS and by the debtors' medical and hospitalization insurer. *Id.* at 610. The court considered the adult children to be dependents for purposes of § 1325(b), because "society is prepared in this day and age to accept the notion that a 19–year old and a 21–year old undergraduate college students are still their parents' dependents," and the "[d]ebtors' children, although above the age of majority, have within society's current expectations reasonably not yet left the nest." *Id.* at 610–11.

■ When a term is not defined, and without legislative intent to the contrary, "statutory terms are given their plain, ordinary, and commonly understood meaning." *Schumacher v. Cargill Meat Solutions Corp.,* 515 F.3d 867, 871 (8th Cir. 2008). However, the definition of dependent must require more than mere reliance. Section 707(b)(2) was enacted as part of BAPCPA, the purpose of which, in part, was to "curb abuse of the bankruptcy system by implementing a means test to ensure that those who can afford to repay some portion of their unsecured debts are required to do so." 151 Cong. Rec. S2462, 2470 (2005)(statement of Sen. Nelson). The means test was intended to "ensure that debtors repay creditors the maximum they can afford." H.R.Rep. No. 109–31, pt. 1 (2005). When adult children qualify as dependents under § 707(b)(2)(A)(ii)(I), debtors apply standards based on a larger family size, and, therefore, subtract a greater amount of expenses from their

---

**8.** For IRS purposes, a dependent is either a qualifying child or a qualifying relative. 26 U.S.C. § 152.

current monthly income. Depending on the resulting figure, more dependents may result in an amount of disposable income that does not trigger the presumption of abuse, which may in turn allow chapter 7 debtors to avoid dismissal or conversion of their cases under § 707(b)(2).

 In the light of the purpose of § 707(b)(2), the ordinary meaning of the term "dependent" as defined by Black's Law Dictionary is too broad; it could conceivably include persons who live outside the debtor's home and who are only somewhat dependent on the debtor. This would clearly be an abuse and manipulation of the means test. This Court agrees with the *Gonzales* court that "at some point in time, under some circumstances, the debtor's moral obligation to provide support for her children becomes sufficiently tenuous that it must yield to the countervailing interest of the debtor's creditors in receiving payment." *In re Gonzales,* 157 B.R. at 609–11; *see also In re Mastromarino,* 197 B.R. 171, 178 (Bankr.D.Me.1996)(stating that "[t]o grant such voluntary expenditures priority over existing legal obligations would be to permit Mastromarino unilaterally to subordinate his creditors to his personal lifestyle choices. That he may not do."). However, that point in time must be determined on a case-by-case basis on the facts of each case. In applying the ordinary meaning of dependent, this Court is also guided by the *Dunbar* court's analysis:

> This Court's definition of the term "dependent" requires that the debtor have reason to provide support and that the claimed dependent have reason to rely on the debtor. A case by case analysis is necessary in order to determine, for example, the length of time the claimed dependents have resided in the household . . ., the reason the claimed dependents are residing in the household . . ., and whether the claimed dependents were in fact necessitous. . . .

*In re Dunbar,* 99 B.R. at 325 n. 3. Other facts to consider include the age of the alleged dependents, how much income or support from third parties they receive, and whether they are in school. Additionally, an important inquiry is whether the alleged dependent could be claimed as a dependent on the debtor's IRS tax returns [9] or could qualify as a dependent in another legally cognizable way, for example, for the purpose of medical insurance.

### Application

 On the facts presented, this Court finds that Arrin and her son qualify as

9. The Court is mindful of the Bankruptcy Appellate Panel's decision in *In re Wilson,* in which the court overruled the bankruptcy court's decision to allow the debtors to claim a vehicle ownership expense deduction even though the debtor owned the car outright under § 707b(2), because the ruling was "inconsistent with how the IRS applies its own standards" in the Internal Revenue Manual [IRM]. *Babin v. Wilson (In re Wilson),* 383 B.R. 729, 733 (8th Cir. BAP 2008). To the extent the bankruptcy appellate court's decision in *Wilson* may be interpreted to require the number of dependents for purposes of § 707(b)(2) to correspond with the number of dependents claimed on debtor's IRS tax returns, this Court notes that the IRM does not *require* the number of persons allowed for National Standard expenses to be the same as those claimed on their IRS tax returns for their own purposes of determining a taxpayer's necessary expenses—

> Generally, the total number of persons allowed for national standard expenses should be the same as those allowed as exemptions on the taxpayer's current year income tax return. . . . There may be reasonable exceptions. . . . For example, foster children or children for whom adoption is pending.

IRM, Financial Analysis Handbook § 5.15.1.7, no. 8; *see also* IRM, Financial Analysis Handbook § 5.15.1.9, no. 1A (applying same language to determination of family size under Local Standards).

dependents under § 707(b)(2). Arrin's reliance on the debtor, financially and otherwise, began almost a year before he filed his bankruptcy petition and continued until about a year afterward. At the time of the bankruptcy filing, Arrin was 24 years old, had an infant son, was unemployed, and a full-time student. She only received financial assistance from outside sources to pay for a portion of her vehicle, childcare, and education expenses. It is unclear whether her financial assistance paid for all of these expenses because the Court does not know how much assistance she received or how much her expenses were. Nonetheless, she remained dependent upon the debtor for shelter, utilities, food for her and her child, and supplies for her child.[10] Arrin's son is also a dependent of the debtor, because he had lived with the debtor from birth and was completely reliant upon the debtor for his and his mother's support. Additionally, Arrin received no child support payment with which to take care of him.

While such reliance and familial relationship does not automatically qualify a person as a dependent under § 707(b)(2), there are additional facts in this case that cause the Court to find that Arrin and her son are dependents. Although there was testimony that the debtor did not claim Arrin on his 2005 or 2006 tax returns or her son on his 2006 tax returns, the debtor testified that he did not know whether he could have and no one told him he could not. Therefore, the Court does not know whether Arrin and her son *could* have qualified under the IRS tax code as dependents of Mr. Justice. Further, although Mr. Justice waited more than seven months to amend his Means Test, there is no evidence that the debtor amended his

Means Test in order to manipulate the results of the calculation. It appears from the debtor's deposition that he added Arrin and her son on his counsel's advice that case law existed supporting that change. In addition, the debtor considered Arrin and her son dependents on Schedule I of his bankruptcy schedules. While adding two household members did remove a presumption of abuse, this Court had already denied Advanced Control's motion to dismiss in the face of a presumption of abuse. The amendment had no practical effect on the outcome of his case until the Court's Order Granting Debtor's Motion for Discharge was reversed and Order Overruling Motion to Dismiss was vacated, which occurred after the debtor filed his Amended Means Test.

Allowing the debtor to claim as dependents his college-aged, unemployed daughter who was a full-time student and her infant son under the facts and evidence stated above is not at odds with the purposes of § 707(b)(2). Because the plain, ordinary meaning of the term "dependent" as used in § 707(b)(2) is not so narrow as to exclude Arrin and her son, the Court finds that the debtor properly chose the applicable local and national standards based on a family size of five.

**Whether the Debtor May Also Claim the $125.00 Educational Expense**

■ Section 707(b)(2) states that the debtor's monthly expenses—

> may include the actual expenses for each dependent child less than 18 years of age, not to exceed $1,650 per year per child, to attend a private or public elementary or secondary school *if the debtor provides documentation of such expenses and a detailed explanation of*

---

**10.** From testimony, it appears Arrin relied on Ms. Justice for some childcare and for some of her child's clothes. However, Ms. Justice has no income and is also a dependent of the debtor.

*why such expenses are reasonable and necessary,* and why such expenses are not already accounted for in the National Standards, Local Standards, or Other Necessary Expenses referred to in subclause (I).

11 U.S.C. § 707(b)(2)(A)(ii)(IV)(emphasis added). This allowed expense is reflected on line 38 of the means test form, which directs the debtor to state his actual average monthly education expenses for minor children, not to exceed $125.00 per child. The debtor listed an expense of $125.00. At the hearing, the debtor testified this monthly expense was for a school-related trip to Europe for his minor daughter. He testified that she was not required to go on the trip and, in fact, did not. However, the debtor did not receive a refund of the funds paid. The debtor also testified that he did not remember providing the trustee any documentation regarding this expense.

This expense was also listed on the debtor's Means Test, and Mr. Justice testified about this expense at the hearing on the Motion to Dismiss on July 24, 2007. At the conclusion of the July 24, 2007, hearing, Advanced Control argued this expense should not be allowed, and, if subtracted from the debtor's expenses, would result in an even greater presumption of abuse. At that hearing, the Court denied Advanced Control's motion to dismiss under § 707(b)(2) and (b)(3). In denying the motion to dismiss under § 707(b)(2), the Court did not reach the issue of whether the educational expense was properly claimed because it declined to dismiss the case based on a preliminary determination that it was not in the creditors' best interests to dismiss or convert the case despite the presumption of abuse.

The Court finds that the expense for the minor daughter's trip to Europe was not reasonable and necessary, and the debtor provided no evidence or testimony to the contrary. Section 707(b)(2)(A)(ii)(IV) states that the debtor *may* include the educational expense *if* the debtor provides documentation and a detailed explanation of why the expense is reasonable or necessary. At the hearing, the debtor did not show that he had done either and testified that the trip was not required. Because the debtor did not meet the requirements of § 707(b)(2)(A)(ii)(IV), the debtor may not include the educational expense, and the educational expense is disallowed.

Excluding the educational expense on the debtor's Amended Means Test results in a monthly disposable income of $148.06 and a 60–month disposable income of $8883.60. According to line 52, because the debtor's 60–month disposable income is more than $6000.00 but less than $10,000.00, the debtor would have to complete the remainder of Part VI of the Amended Means Test to determine whether his 60–month disposable income is less than 25% of his total non-priority unsecured debt. According to the debtor's Amended Schedule F, filed on November 6, 2006, the debtor has $247,883.51 in total non-priority unsecured debt, 25% of which is $61,970.88. Because this amount is greater than his 60–month disposable income of $8883.60, a presumption of abuse does not arise as a result of adding $125.00 to the debtor's current monthly income. An additional $18.61 in current monthly income would be necessary for this to be a presumption of abuse case.

**Effect on the Debtor's Current Monthly Income of Arrin and Her Child as Dependents under § 707(b)(2)(A)**

 Because Arrin and her son are dependents of the debtor, Mr. Justice may be required to include additional amounts in his current monthly income calculation on his Amended Means Test. Current monthly income—

(A) means the *average monthly income from all sources that the debtor receives* (or in a joint case the debtor and the debtor's spouse receive) . . .; and

(B) *includes any amount paid by any entity* other than the debtor (or in a joint case the debtor and the debtor's spouse), *on a regular basis for the household expenses of the debtor or the debtor's dependents* (and in a joint case the debtor's spouse if not otherwise a dependent), but excludes benefits received under the Social Security Act, payments to victims of war crimes or crimes against humanity on account of their status as victims of such crimes, and payments to victims of international terrorism (as defined in section 2331 of title 18) or domestic terrorism (as defined in section 2331 of title 18) on account of their status as victims of such terrorism.

11 U.S.C. § 101(10A). As the objecting party, Advanced Control had the burden of proving that a portion of the amounts Arrin or her son received were paid on a regular basis and paid for the household expenses of the debtor and his dependents. *In re Roll,* 400 B.R. 674, 676 (Bankr. W.D.Wis.2008).

There was no testimony that the debtor received any income from Arrin or her son, but Arrin did receive some amount of financial assistance for some of her expenses from the Single Parent Scholarship Fund, educational scholarships, and some state childcare assistance. The debtor's current monthly income must only contain the amounts that were paid on a regular basis for household expenses of the debtor's dependents, which now include Arrin and her son. The Court has evidence that Arrin received assistance for her vehicle costs, education, and her son's childcare, but cannot determine how much she received exactly. The best evidence the

Court has regarding whether any amount she received was paid regularly are the following excerpts from Mr. Justice's deposition and testimony. At his deposition, the following exchange took place—

Advanced Control: Does Arrin-how does Arrin support herself?

Debtor: She is going to school. She has some grants and the Single Parent Scholarship Fund is helping her get through college. She's going to college, a full-time student right now.

Advanced Control: Does the State pay or give her any kind of equivalent to child support?

Debtor: Not that I know if. The only thing I know the State does is they pay for daycare.

. . .

Advanced Control: From December of 2006 until she moved out, how did she get spending money during that time frame?

Debtor: She has gotten scholarships and support from the Single Parent Scholarship Fund.

Advanced Control: Do they give her money?

Debtor: I guess so. I know they made her car payment and her auto insurance payment, but I do not know what else they did. But she did not contribute money to the household.

Advanced Control: What do you mean when you say those words?

Debtor: She didn't pay any bills

Advanced Control: When did she start getting that scholarship money?

Debtor: I do not know.

Advanced Control: Was she going to school in the spring of 2007?

Debtor: Yes.

Advanced Control: Was she on that scholarship then?

Debtor: Yes.

Advanced Control: Was she on that scholarship in the fall of 2006?

Debtor: I would assume, yes.

. . .

Advanced Control: And the way she got by when she lived with you all is she was getting these scholarships for being a single parent; correct?

Debtor: Correct.

At the January 14, 2009, hearing, Mr. Justice testified—

Advanced Control: Was it true that you told me that they, being the Single Parent Scholarship Fund, paid for her car payment and auto insurance payment while she was lived with you?

Debtor: Yes.

Advanced Control: And that is still true today?

Debtor: That is a true statement yes.

Advanced Control: And that is while she was living with you

Debtor: That is while she was living with us.

Advanced Control: The amount of that car payment and car insurance that was being paid for, was that, how much was that, $200 or?

Debtor: I don't know.

Advanced Control: More than $100?

Debtor: I don't know.

Advanced Control: . . . Any reason why you think it would be less than $100?

Debtor: I don't know what it would have been.

. . .

Advanced Control: So you don't know the total amount of child support, car insurance, car payments that she received from third parties while she was living with you?

Debtor: No, I do not know the totals of any of that.

Mr. Justice testified that the state *pays* for Arrin's daycare, the Single Parent Scholarship fund *paid* her car payment and auto insurance payment *while* Arrin lived with the debtor, and the scholarship payments were still being made as of the January 14 hearing. His testimony indicates that the financial assistance Arrin received was ongoing throughout her stay with him. And, Arrin's car insurance, car payment, and daycare expenses are household expenses of the debtor's dependents. But, there is no testimony or evidence as to how much assistance Arrin was receiving monthly. Two courts have faced a similar lack of evidence regarding current monthly income calculations. In the context of the U.S. Trustee's motion to dismiss under § 707(b)(2), the court in *In re Roll* could not determine how much income of two separate, cohabitating debtors should be attributed to each other's current monthly income calculation, and lamented that although "surely [each debtor] use[s] a portion of their income to pay household expenses of the other, the record is insufficient to draw any meaningful conclusion about the correct amount to attribute to each debtor." *In re Roll,* 400 B.R. 674, 676–77. Likewise, in *In re Quarterman,* the objecting party did not meets in burden in proving that the debtor's spouse regularly contributed toward household expenses of the debtor or the debtor's dependents. *In re Quarterman,* 342 B.R. 647, 652 (Bankr.M.D.Fla.2006). Consequently, the debtor was left with no disposable income to contribute to his chapter 13 plan. *Id.* Regarding the outcome, the court stated that "the Court cannot presume that the Debtor's spouse regularly contributed nearly two-thirds of her income toward household expenses of the Debtor." *Id.*

The Court cannot determine the exact amount of money paid by third party enti-

ties while Arrin lived with the debtor for her vehicle payment, car insurance payment, and daycare for her son. But the purpose of the means test calculation in a chapter 7 case is to determine whether a presumption of abuse exists. This Court does not have to know the exact amounts to find that Arrin received *some* amount on a regular basis for the payment of her car insurance, car payment, and childcare. Unlike the court in *Quarterman,* this Court will not have to presume that two-thirds of the dependents' assistance was paid regularly for household expenses for a presumption of abuse to exist. If Arrin received just $18.61 a month, a presumption of abuse would exist in this case. It is inconceivable the assistance Arrin received that covered her car insurance, car payment, and daycare was less than $18.61 a month. Further, unlike the problem the *Roll* court faced, based on the debtor's testimony, this Court can reasonably conclude that Arrin regularly received at least $18.61 a month from entities to pay her car insurance, car payment, and daycare expense while she and her son were living with the debtor. After adding this minimum amount of $18.61 plus $125.00, which was previously subtracted as an educational expense, to the debtor's current monthly income of $23.06 on line 50 of his Amended Means Test, the debtor has a current monthly income of $166.67, and a 60–month disposable income of $10,000.20. Accordingly, the Court finds that a presumption of abuse arises in this case.

**Conclusion**

Based on the facts of this case, the Court makes three findings. First, this Court finds that the debtor's adult daughter, Arrin, and her son are dependents of the debtor under § 707(b)(2)(A)(ii)(I), and that the debtor completed his Amended Means Test correctly by choosing applicable standards based on a family size of five. Second, the $125.00 educational expense is disallowed. And third, Arrin and her son received at least $18.61 in financial assistance that must be included in the debtor's current monthly income. After making adjustments to the debtor's Amended Means Test based on these findings, a presumption of abuse exists in this case, and Advanced Control's motion to dismiss is granted. The debtor shall have 20 days to convert his case, or the case will be dismissed.

IT IS SO ORDERED.